STATE of Iowa, Appellee,

v.

Henry Lee McGEE, Appellant.

Nos. 84–1506, 84–1632.

Supreme Court of Iowa.

Feb. 19, 1986.

Gerald Crawford of Neiman, Neiman, Stone & Spellman, P.C., Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Elizabeth F. Ciebell, Asst. Atty. Gen., and James A. Smith, County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ, and WOLLE, JJ.

SCHULTZ, Justice.

Henry Lee McGee appeals from judgment and sentence upon his convictions of possession of a controlled substance with intent to deliver in violation of Iowa Code section 204.401(1) and carrying a dangerous weapon in violation of section 724.4. On motion the appeals were consolidated. The issues on appeal arise from the trial court's denial of defendant's motion to suppress evidence obtained from a warrantless search of defendant's person and his automobile. Defendant maintains that: (1) the officers did not have probable cause to seize him; (2) a stop and frisk search should not extend to minor offenses including possession of narcotics; and (3) the warrantless search of his automobile was without exigent circumstances. We do not agree and affirm.

On April 18, 1984, and again on April 24, Des Moines Police Officers House and Scarcello were told by a paid confidential informant that the defendant was selling "boys" and "girls," street names for different types of controlled substances, and that defendant was carrying a gun under the front seat of his automobile. Both officers personally knew the informant, and they found his information to be credible and reliable in the past. A week earlier, the informant had accurately told one of the officers where a stolen moped was located. Over the past few years the other officer had recovered stolen property and made arrests based on information supplied by the informant. The officers opined that the informant had never given them untrue information.

On April 24 the informant's information was passed to Officers Trimble and White. They located the defendant and his automobile. The defendant was about to enter his automobile when the police drove up behind his car. As they approached defendant the officers noticed he dropped a small package. The officers retrieved the package and concluded it contained a controlled substance. A search of defendant's person yielded $601 in cash, eleven .38 caliber shells, a paper containing a name and phone number, and a glassine envelope containing white powder. The automobile was searched and a revolver was found under the front seat.

The defendant sought to suppress both the controlled substance and the revolver as fruits of illegal searches of his person and automobile. The trial court overruled the motion.

I. *Seizure of his person.* Defendant maintains that he was illegally seized by the officers without a warrant in violation of his fourth amendment rights under the United States Constitution. He claims the seizure occurred when Officers White and Trimble pulled up behind the automobile he was about to enter and shouted his name. Defendant asserts the officers allegedly restrained his liberty by the commanding tone of their voices. The State on the other hand claims that the initial confrontation was merely an investigatory stop and no seizure occurred prior to defendant's arrest.

■ It is undisputed that the fourth amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person. A seizure occurs when the officer has in some way restrained the liberty of a citizen by means of physical force or a show of authority. *State v. Harlan,* 301 N.W.2d 717, 719 (Iowa 1981). However, in some circumstances a person may be detained briefly, without violating such person's fourth amendment rights. In *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968), the United States Supreme Court recognized that a police offi-

cer may, in appropriate circumstances and in an appropriate manner, approach a person for the purpose of investigating possible criminal behavior even without probable cause for arrest. During this investigatory stop a limited protective search may be conducted "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908.

■ Our de novo review of the facts do not indicate that a seizure took place prior to defendant's arrest, as asserted by defendant. The officers approached defendant in their squad car and parked behind his automobile. The officers involved knew the defendant and called him by his street name "Poncho." There is no evidence concerning the officers' tone of voice. The officers did not display their weapons and no command was given. There was no seizure at that time.

■ As the officers approached, they noticed that defendant dropped his left hand down to his side and casually tossed a cigarette package to the ground slightly underneath his vehicle. While one officer reached for and retrieved this object, the other officer placed the defendant against defendant's vehicle. This casual use of force was to allow the other officer to complete his investigation without fear of violence. The officers were in the receipt of confidential information that the defendant carried a gun in his automobile. Defendant was standing beside the automobile and a door was open. The action of the officers was reasonable in light of the facts known to them at that time. The brief intrusion on defendant was justified and did not constitute a seizure. Only when they determined that the cigarette pack contained foil bindles, a term used to described foil that is folded in a small package and used to contain a controlled substance, did the officers take action that constituted a seizure. At that time the officers had reasonable grounds for an arrest. Thereafter, defendant was searched.

The search of his person was lawful as a search incident to an arrest.

■ Defendant also contends that the officers lacked the necessary reasonable suspicion to initiate an investigatory stop. He asserts that since the officers relied upon the informant's tip and had no personal knowledge of criminal activity on his part, they were not justified in stopping him. There is no merit to this contention. In *Adams v. Williams* the Supreme Court stated: "Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, ... the information carried enough indicia of respect of reliability to justify the officer's forcible stop of Williams." 407 U.S. 143, 147, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612, 617 (1972) (citations omitted). This statement in *Adams* goes far beyond the present situation where there was not a forcible stop of the suspect.

■ II. *Stop and frisk search in narcotic offenses.* Defendant urges that this court give serious consideration to the argument that a *Terry* (stop and frisk) stop should not be extended to minor offenses, like possession of narcotics. Defendant cites a dissenting opinion in *Adams* in which Justice Brennan suggests that extending the *Terry* stop to crimes like the possession of narcotics would open the "sluicegates" for serious erosion of the protection of the fourth amendment. 407 U.S. at 153, 92 S.Ct. at 1927, 32 L.Ed.2d at 621 (Brennan, J., dissenting).

Initially, we do not agree that narcotics offenses are minor offenses. Distribution of heroin is either a Class "C" or Class "B" felony, depending upon the age of the participants. Iowa Code §§ 204.401, .406. Additionally, the public has an interest in the apprehension and conviction of individuals who traffic deadly drugs for profit. The use of hard drugs affects public health and welfare, especially that of young people. Huge profits are made at the expense of unfortunate drug users. Drugs are easily concealed, and the investigatory stop

procedures announced in *Terry* are well suited for enforcing the narcotics laws. In such enforcement, officers often operate on the basis of information obtained from confidential informants and the use of their own training and experience. Narcotics offenders should not be afforded special treatment that might be allowed to those who commit minor offenses.

■ III. *Search of the automobile.* Defendant maintains that the search of his automobile was performed without a search warrant, without exigent circumstances, and not incident to a lawful arrest. We disagree.

From our review of the record we find that the search of the automobile was conducted only after the officers discovered the "bindles" in the cigarette package and had reasonable cause to arrest defendant. Defendant's person was searched first. He was given his Miranda warnings before and after the search of his person. Then the officers searched the automobile. The defendant had previously opened the front door of the automobile and was in the immediate proximity of the automobile. We conclude that the search of the automobile was incident to defendant's arrest. An officer may search, incident to a lawful arrest, the area within the arrestee's immediate control, including the entire passenger compartment, for a weapon. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775 (1981); *State v. Olsen,* 315 N.W.2d 1, 4–5 (Iowa 1982).

■ Even if the search of defendant's automobile was not contemporaneous with his arrest, the search would nevertheless have been valid. Officers who have made a *Terry* investigatory stop, but have not arrested the driver of the automobile, can still search those parts of the passenger compartment where a weapon may be hidden on the reasonable relief that the detainee is dangerous and may gain access to a weapon. *Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201, 1220–21 (1983). Here, we have concluded that the officers had con-

ducted a legitimate investigatory stop and had reasonable grounds to believe that defendant had a gun. The officers were justified in making a protective search of the automobile because they had a reasonable belief that defendant was dangerous and could gain access to a weapon hidden in the car.

In summary, the trial court did not err in failing to suppress the evidence gained from a search of defendant's person and his automobile.

AFFIRMED.